**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PAUL PARSHALL, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| UNIVERSAL AMERICAN CORP., RICHARD A. BARASCH, SALLY W. CRAWFORD, MATTHEW W. ETHERIDGE, MARK K. GORMLEY, MOHIT KAUSHAL, PATRICK J. MCLAUGHLIN,WELLCARE HEALTH PLANS, INC.,  and WIND MERGER SUB, INC. | ) ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This action stems from a proposed transaction announced on November 17, 2016 (the "Proposed Transaction"), pursuant to which Universal American Corp. ("Universal American" or the "Company") will be acquired by WellCare Health Plans, Inc. ("Parent") and Wind Merger Sub, Inc. ("Merger Sub," and together with Parent, "WellCare").

2.      On November 17, 2016, Universal American's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, shareholders of Universal American will receive $10.00 per share in cash.

3.     On January 17, 2017, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Universal American common stock.

9.     Defendant Universal American is a Delaware corporation and maintains its principal executive office at 44 South Broadway, White Plains, New York 10601.  Universal American's common stock is traded on the NYSE under the ticker symbol "UAM."

10.     Defendant Richard A. Barasch ("Barasch") is a director, Chairman, and Chief Executive Officer ("CEO") of Universal American.

11.     Defendant Sally W. Crawford ("Crawford") is a director of Universal American. According to the Company's website, Crawford is a member of the Audit Committee, a member of the Compensation Committee, Chair of the Compliance Committee, and Chair of the Nominating Committee.

12.     Defendant Matthew W. Etheridge ("Etheridge") is a director of Universal American.  According to the Company's website, Etheridge is Chair of the Compensation Committee, a member of the Investment Committee, and a member of the Compliance Committee.

13.     Defendant Mark K. Gormley ("Gormley") is a director of Universal American. According to the Company's website, Gormley is a member of the Audit Committee, the Investment Committee, the Compliance Committee, and the Nominating Committee.

14.     Defendant Mohit Kaushal ("Kaushal") is a director of Universal American.

15.     Defendant Patrick J. McLaughlin ("McLaughlin") is a director of Universal American.  According to the Company's website, McLaughlin is Chair of the Audit Committee and Chair of the Investment Committee.

16.     The defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

17.     Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

18.     Defendant Merger Sub is a Delaware corporation, an indirect wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Universal American (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20.     This action is properly maintainable as a class action.

21.     The Class is so numerous that joinder of all members is impracticable.  As of November 15, 2016, there were approximately 56,607,026 shares of Universal American common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the

adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

26.     Universal American, through its family of healthcare companies, provides health benefits to individuals covered by Medicare.  The Company is dedicated to working collaboratively with healthcare professionals, especially primary care physicians, to improve the health and well-being of individuals and reduce healthcare costs.

27.     On November 17, 2016, the Board caused Universal American to enter into the Merger Agreement, pursuant to which the Company will be acquired for inadequate consideration.

28.     The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.  Section 5.4(a) of the Merger Agreement states:

> (a) From the date of this Agreement until the Effective Time, except as expressly permitted by Section 5.4(b), the Company shall not, nor shall the Company permit any of its Subsidiaries to, and the Company shall use its reasonable best efforts to cause its and their respective Representatives not to (i) solicit, initiate and knowingly facilitate or encourage (including by way of furnishing non-public information or providing access to its properties, books, records or personnel) any

inquiries regarding, or the making of any proposal or offer that constitutes, or that could reasonably be expected to lead to, a Takeover Proposal, (ii) enter into, continue or otherwise have any discussions (other than to state that the Company is not permitted to have discussions under this Agreement, or to clarify the terms thereof), or otherwise participate in any negotiations regarding a Takeover Proposal, (iii) execute or enter into any Contract with respect to a Takeover Proposal (other than an Acceptable Confidentiality Agreement if permitted by Section 5.4(b)), (iv) take any action to make the provisions of any anti-takeover Law or any restrictive provision of any applicable anti-takeover provision in the Certificate of Incorporation or Bylaws inapplicable to any transactions contemplated by any Takeover Proposal, or (v) authorize any of or commit to agree to do any of the foregoing, other than in connection with the actions permitted under Sections 5.4(c), (d) and (e). Immediately following the date of this Agreement, the Company shall, and shall cause its Subsidiaries to and shall use its reasonable best efforts to cause its and their respective Representatives to (1) cease any existing solicitations, discussions, communications or negotiations with any Person (other than the parties and their respective Representatives) in connection with an Takeover Proposal or any potential Takeover Proposal and (2) terminate existing access to any physical or electronic data rooms relating to any Takeover Proposal or potential Takeover Proposal (other than for Parent, Merger Sub and their respective Representatives).

29.     Further, the Company must promptly advise WellCare of any proposals or inquiries received from other parties.  Section 5.4(b) of the Merger Agreement states, in relevant part:

From and after the date of this Agreement, the Company shall advise Parent in writing of the receipt of (x) any Takeover Proposal, or (y) any inquiry, proposal, offer or request for information with respect to, or that could reasonably be expected to lead to, any Takeover Proposal (in each case within one Business Day of receipt thereof) and disclose to Parent the material terms, conditions, and status of any such Takeover Proposal and provide copies of any such written inquiry, proposal, offer or request for information, including the identity of the Person or group of Persons making such inquiry, proposal, offer or request for information (provided, that the Company shall not be required to disclose the identity of the Person making such Takeover Proposal if such disclosure is prohibited by the terms of a confidentiality agreement with such Person that is in effect as of the date of this Agreement). The Company shall notify Parent within one Business Day orally and in writing of any material modifications to the financial or other material terms of such Takeover Proposal or inquiry, proposal, offer or request for information.

30.     Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants WellCare a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 5.4(d) of the Merger Agreement provides:

> (d) Notwithstanding Section 5.4(c), the Company Board may, before obtaining the Requisite Company Vote, in response to a Superior Proposal received by the Company Board after entry into this Agreement, terminate this Agreement pursuant to Section 7.4(a) to enter into a Contract with respect to such Superior Proposal, but only if:
>
> (i) such Superior Proposal did not result, directly or indirectly, from a material breach by the Company of this Section 5.4;
>
> (ii) the Company shall have first provided prior written notice to Parent that it is prepared to terminate this Agreement to enter into an agreement with respect to such Superior Proposal, which notice shall include a summary of the material terms and conditions of and copies of all material transaction agreements and other material documents relating to such Superior Proposal and the identity of the Person making such Superior Proposal;
>
> (iii) during the five Business Day period following Parent's receipt of such notice, the Company shall have negotiated in good faith (to the extent Parent desires to negotiate) to make such adjustments in the terms and conditions of this Agreement and any ancillary agreements intended to cause such Takeover Proposal that constituted a Superior Proposal to cease to constitute a Superior Proposal; and
>
> (iv) Parent does not make, within five Business Days after the receipt of such notice, a binding, written and complete (including any schedules or exhibits) proposal that the Company Board determines in good faith, after consultation with its legal and financial advisor, causes the Takeover Proposal that constituted a Superior Proposal to no longer constitute a Superior Proposal (it being understood that any amendment, revision, change or supplement to the financial terms or other material terms or conditions of such Superior Proposal shall require a new written notification pursuant to the foregoing clause (iii) and a new negotiation period under this clause (iv), which negotiation period shall be three Business Days instead of five Business Days).

31.     Further locking up control of the Company in favor of WellCare, the Merger Agreement provides for a "termination fee" of $18 million, payable by the Company to

WellCare if the Individual Defendants cause the Company to terminate the Merger Agreement. The Company may also be required to reimburse WellCare's expenses up to $2 million.

32.    By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

***Inadequate Merger Consideration and Interests of the Company's Officers and Directors***

33.    The consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate.

34.    Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

35.    The Proposed Transaction consideration also fails to adequately compensate the Company's stockholders for the significant synergies that will result from the merger. According to the press release announcing the Proposed Transaction, "WellCare expects annual synergies of approximately $25 million to $30 million by 2019."

36.    Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

37.    Meanwhile, certain of the Company's officers and directors stand to receive substantial benefits as a result of the Proposed Transaction.

38.    For example, Erin Page ("Page"), current President, Medicare of the Company, will be retained by WellCare following the close of the Proposed Transaction and will receive a retention bonus in connection with her retention.

39.     Additionally, Individual Defendant Barasch stands to receive $13,026,995 in connection with the Proposed Transaction.   Page stands to receive $4,136,858, and the Company's other named executive officers stand to receive $7,000,823.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

40.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

41.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

42.     First, the Proxy Statement omits material information regarding Universal American's financial projections and the financial analyses performed by the Company's financial advisor, MTS Securities, LLC ("MTS"), in support of its so-called fairness opinion.

43.     For example, the Proxy Statement fails to disclose:  (i) a complete listing of all of the projection line items for Universal American as provided by management and/or relied upon by MTS in its financial analyses for both business segments, as well as the Company as a whole, including but not limited to revenue, segment related expenses, stock-based compensation expense, tax attributes, M&A activity, other corporate finance activities, other corporate cash flow items, and restricted stock dividends; and (ii) a reconciliation of GAAP to non-GAAP metrics.

44.     With respect to MTS's *Sum-of-the-Parts Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) unlevered free cash flows for each of the business segments; (ii) each of the constituent line items used in the calculations of the unlevered free cash flows; (iii) the calculated terminal values for each of the business segments; (vi) MTS's basis for applying a range of terminal value EBITDA multiples of 6.0x to 10.0x and 7.0x to

11.0x to the respective business segments; and (vii) the specific inputs and assumptions used to determine the different discount rates of 8.3% to 9.3% and 17.3% to 18.3% for the respective business segments.

45.    When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

46.    The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; (ii) "Reasons for the Merger"; (iii) "Opinion of the Company's Financial Advisor"; and (iv) "Projected Financial Information."

47.    Second, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

48.    Specifically, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Universal American's officers and directors, including who participated in all such communications.

49.    Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that

information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

50.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; (ii) "Reasons for the Merger"; and (iii) "Interests of the Company's Directors and Executive Officers in the Merger."

51.     Third, the Proxy Statement omits material information regarding the background of the Proposed Transaction.  The Company's stockholders are entitled to an accurate description of the "process" the directors used in coming to their decision to support the Proposed Transaction.

52.     For example, the Proxy Statement fails to disclose whether the confidentiality agreements executed between the Company and the various bidders, including "Party A," "Party B," Party C," and "Party D," contained standstill and/or "don't ask, don't waive" provisions.

53.     The Proxy Statement fails to disclose the financial terms of:  (i) the "indications of interest were received by UAM during the Early 2015 Process"; (ii) the individual "indications of interest for the Texas Businesses" submitted by WellCare, Party C, and Party D; and (iii) the "indication of interest for UAM's Total Care NY Medicaid Plan business" submitted by Molina Healthcare.

54.     The Proxy Statement also fails to disclose the Board's basis for not retaining the "Prior Financial Advisor" in connection with the 2015-2016 strategic review process.

55.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; and (ii) "Reasons for the Merger."

56.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Universal American's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Universal American**

57.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Universal American is liable as the issuer of these statements.

59.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

60.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

61.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

62.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

63. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

64. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and WellCare

65. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66. The Individual Defendants and WellCare acted as controlling persons of Universal American within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Universal American and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

67. Each of the Individual Defendants and WellCare was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

68. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were

thus directly in the making of the Proxy Statement.

69.     WellCare also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

70.     By virtue of the foregoing, the Individual Defendants and WellCare violated Section 20(a) of the 1934 Act.

71.     As set forth above, the Individual Defendants and WellCare had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: January 27, 2017

**RIGRODSKY & LONG, P.A.**

By:   */s/ Brian D. Long*
      Seth D. Rigrodsky (#3147)
      Brian D. Long (#4347)
      Gina M. Serra (#5387)
      2 Righter Parkway, Suite 120
      Wilmington, DE 19803

**OF COUNSEL:**
      Tel.: (302) 295-5310
      Fax: (302) 654-7530

**RM LAW, P.C.**
      sdr@rl-legal.com
Richard A. Maniskas
      bdl@rl-legal.com
995 Old Eagle School Road, Suite 311
      gms@rl-legal.com
Wayne, PA 19087
(484) 588-5516

*Attorneys for Plaintiff*